DAVID A. WHITENER, *et al.*

*v.*

W. VA. BOARD OF EMBALMERS And

FUNERAL DIRECTORS, *etc., et al.*

(No. 14635)

Decided March 12, 1982.

*Chauncey H. Browning*, Attorney General, and *Gregory W. Bailey*, Deputy Attorney General, for appellants.

*Bowles, McDavid, Graff & Love, F. T. Graff, Jr. and P. Nathan Bowles, Jr.*, for appellees.

*Jackson, Kelly, Holt & O'Farrell, James R. Synder and John L. McClaugherty*, amicus curiae for W. Va. Funeral Directors Ass'n.

HARSHBARGER, JUSTICE:

W. Va. Code, 47-14-2 *et seq.*,[1]designates a recipient of

---

[1] Pertinent provisions of Chapter 47, Article 14:

47-14-2: "Any person, association, partnership, firm or corporation who shall receive any money under any agreement, contract or plan entered into after the effective date of this article [June 10, 1965], for the final disposition of a deceased person, or for the embalming, cremation or other services relating to the actual interment of a dead human body, or for funeral or burial services, or for the furnishing of funeral or burial merchandise, including vaults and other outside burial receptacles, wherein the said embalming, cremation or other services or the delivery of funeral or burial merchandise or the furnishing of professional services by a funeral director or embalmer or both is not immediately required but shall be required at an undertermined future time, is hereby declared to be trustee thereof, and shall deposit any and all such money paid thereunder in a bank, trust company, or savings and loan association, insured by an agency of the United States federal government, and which is authorized to do business in this State, and subject to the terms of the said agreement, contract or plan for the benefit of the purchaser of the same, or of a third-party beneficiary of the purchaser's designation, which are not inconsistent with the provisions of this article.

"All such money shall be so deposited within ten days of payment, and shall be held by such bank, trust company or savings and loan association in a separate interest-bearing account in the name of the trustee, as trustee, and shall be held in trust subject to the provisions of this article. The trustee at the time of making deposit shall furnish to the depositary a copy of each such agreement, contract or plan, the name of each payor, and the amount of payment on each such account for which deposit is being so made."

money paid in advance for funeral-related goods and services, to be a trustee, and requires that such money be deposited in a federally insured bank, trust company or savings and loan association, in a separate account in the name of the trustee, held in trust subject to the terms of the contract by which it is paid; and that the fund may be recaptured by the purchaser.

Appellees, a West Virginia embalmer and funeral director, a funeral home, and a potential customer, sought to determine the Act's constitutionality in a declaratory judgment action in Kanawha County Circuit Court. The funeral people argued that engaging in business is a fundamental constitutional right and that this law pro-

---

47-14-3: "All payments made under said agreement, contract or plan and any earnings or interest thereon shall remain with such bank, trust company, or savings and loan association until the death of the person for whose funeral or burial the funds were paid: Provided, that said funds shall be released to the purchaser of the merchandise or services under said agreement, contract or plan, who shall be entitled to receive the same, or his or her legal representative, at any time, upon written demand upon said bank, trust company, or savings and loan association and upon ten days' notice, in writing, to the other party to the agreement: Provided further, that if the agreement, contract or plan provided for forfeiture and retention of any or all payments by reason of default in payment upon and according to the terms thereof, then upon any such default and forfeiture the trustee may withdraw such deposits: And provided further, that nothing herein contained prohibits the change of depositary by the trustee and the transfer of trust funds from one depositary to another."

47-14-6: "It is unlawful for any such agreement, contract or plan to provide for forfeiture and retention of payments upon any such agreement, contract or plan as and for liquidated damages for default therein in excess of twenty-five percent of the payments made or thirty-five dollars whichever sum is the larger."

47-14-10: "Every person who shall violate any provision of this article shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than one hundred dollars nor more than five hundred dollars or shall be imprisoned for not less than ten days nor more than ninety days, or both. There shall be a separate fine and/or imprisonment for each violation of this article. Justices of the peace shall have concurrent jurisdiction with the circuit, criminal, and intermediate courts to enforce the misdemeanor penalties of this article."

hibits them from doing so; and that portions of W. Va. Code, 30-6-7[2] and 30-6-14,[3] do not apply to them, or are unconstitutional.

---

[2] W. Va. Code, 30-6-7:

"The board may either refuse to issue, or may refuse to renew, or may suspend, or may revoke any embalmer's license or funeral director's license, or embalmer's or funeral director's certificate of registration issued by it for any one or combination of the following causes:

. . .

"(f) Solicitation of business by the licensee, his agents, assistants or employees, whether such solicitation occurs after death or while death is impending: Provided, that this shall not be deemed to prohibit proper advertising.

. . .

"(h) Employment by the licensee of persons as 'cappers,' 'steerers' or 'solicitors,' or other such persons to obtain funeral directing business;

"(i) Employment directly or indirectly of any apprentice, agent, assistant, embalmer, employee, or other person, on part or full time, or on commission, for the purpose of calling upon individuals or institutions by whose influence dead human bodies may be turned over to a particular funeral director;

"(j) The buying of business by the licensee, his agents, assistants, or employees or the direct or indirect payment or offer of payment of a commission by the licensee, his agent, assistants, or employees, for the purpose of securing business."

[3] W. Va. Code, 30-6-14:

"After notice and hearing given and held as notices and hearings are required to be given and held under the provisions of section eight [§ 30-6-8] of this article, the board may revoke or suspend any license to operate a funeral establishment issued under section thirteen [§30-6-13] of this article, for any one or combination of the following causes:

. . .

"(f) Solicitation of business by the holder of a funeral establishment license, his agents, assistants or employees: Provided, that this shall not be deemed to prohibit proper advertising;

. . .

"(h) Employment by the holder of a funeral establishment license of persons as 'cappers,' 'steerers' or 'solicitors,' or other such persons to obtain funeral directing business;

"(i) Employment by the holder of a funeral establishment license directly or indirectly of any apprentice, agent, assistant, embalmer, employee, or other person, on part or full time, or on commission, for the purpose of calling upon individuals or institutions by whose

*State v. Memorial Gardens Development Corp.*, 143 W.Va. 182, 101 S.E.2d 425 (1957), decided that a predecessor statute to W. Va. Code, 47-14-2 was unconstitutional, an unwarranted exercise of the State's police power. 143 W.Va. 182, 101 S.E.2d 425, Syllabus Point 1.

We reverse *State v. Memorial Gardens*, because regulation of the funeral business is within the legitimate scope of state police power. *See* F.T.C., *Funeral Industry Practices: Final Staff Report to the F.T.C. and Proposed Trade Regulation Rule* (16 C.F.R. Part 453) 79-82 (June, 1978).

Laws affecting constitutional rights must satisfy the difficult compelling state interest test. *See Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (right to marry); *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (women cannot be excluded from jury selection); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (right to individual privacy prevents the State from forcing sterilization of people convicted of two or more felonies involving moral turpitude); *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1879) (right to have black people in a jury pool).

However, neither this Court nor the United States Supreme Court has ever recognized that a right to pursue one's business in a certain way is fundamental and that laws affecting that right are subject to strict scrutiny. See *Exxon v. Governor of Maryland*, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978); *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Thorne v. Roush*, 164 W.Va. 165, 261 S.E.2d 72 (1979); *Waite v. Civil Service Commission*, 161 W.Va. 154, 241 S.E.2d 164 (1977). *See e.g., Jasper v. Commonwealth*, 375 S.W.2d 709 (Ky. 1964); *State of Nevada ex rel. List v. AAA Auto Leasing*, 93 Nev. 483,

---

influence dead human bodies may be turned over to a particular funeral establishment;

"(j) The buying of business by the holder of a funeral establishment license, his or its agents, assistants, or employees or the direct or indirect payment or offer of payment of a commission by the licensee, his or its agent, assistants, or employees, for the purpose of securing business."

568 P.2d 1230 (1977); *B. Jeselsohn, Inc. v. Atlantic City,* 70 N.J. 238, 358 A.2d 797 (1976); *Majestic Industries, Inc. v. J. W. St. Clair,* 537 S.W.2d 297 (Tex. Civ. App. 1976); *Steffey v. City of Casper,* 357 P.2d 456 (Wyo. 1960), *modified on other grounds,* 358 P.2d 951 (1961). *See generally* 16 C.J.S. *Constitutional Law,* § 188 (1956 and 1981 Supp). Instead, regulations about how businesses are conducted need only satisfy the less stringent standard that they bear a rational relationship to a legitimate state goal. W. Va. Code, 47-4-1, *et seq.,* meets this test.

The United States Supreme Court has, since the 1930's, firmly maintained that it is a function of legislatures to determine the wisdom and utility of economic policy in legislation. *See West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). In *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963), it upheld the constitutionality of a Kansas statute that permitted only lawyers to engage in debt adjustment practice. Justice Black wrote for the majority:

> Legislative bodies have broad scope to experiment with economic problems, and this Court does not sit to "subject the State to an intolerable supervision hostile to the basic principles of our Government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to secure." [Footnote omitted.] It is now settled that States "have power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition, or of some valid federal law." [Footnote omitted.] *Ferguson v. Strupa, supra* 372 U.S., at 730-31.

A majority of American jurisdictions agree with us that regulatory legislation such as this neither violates the Constitution nor is beyond the scope of legislative regulatory power. Thirty-two other states have statutes requiring one hundred percent of the payment for a pre-need

contract to be placed in a separate trust.[4] Twenty-nine states allow a purchaser to withdraw all of his or her payment plus all accrued interest.[5] These statutes have generally been upheld. *See e.g., Reserve Vault Corporation v. Clint Jones,* 234 Ark. 1011, 356 S.W.2d 225 (1962); *Messerli v. Monarch Memory Gardens, Inc.,* 88 Idaho 88, 397 P.2d 34 (1964); *Memorial Gardens Association, Inc. v. Smith,* 16 Ill.2d 116, 156 N.E.2d 587, *appeal dismissed,* 361 U.S. 31, 80 S.Ct. 121, 4 L.Ed.2d 98 (1959); *J. M. Falkner v. Memorial Gardens Association, Inc.,* 298 S.W.2d 934 (Tex. Civ. App. 1957); *Utah Funeral Directors and Embalmers Association v. Memorial Gardens of the Valley, Inc.,* 17 Utah 2d 227, 408 P.2d 190 (1965).

We find no reason to disagree with the Legislature's pronouncement about the Act's purposes:

> It is hereby determined and declared as a matter of legislative finding (a) that the public has a vital interest in proper disposition of deceased persons; (b) that preneed contracts for furnishing of burial merchandise and services relating to the embalming, cremation or other services associated with the actual interment of dead human bodies, wherein delivery or performance is not immediately required, is a proper subject for the exercise of the police powers of this State; and (c) that the proper exercise of such police powers is regulatory rather than prohibitory.
> W. Va. Code, 47-14-1.

[4] Alaska, Arizona, Arkansas, California, Connecticut, Florida, Georgia, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Montana, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Virginia and Wisconsin. These laws do not cover burial grounds or attached crypts or mausoleums or crypts or vaults which are attached at time of sale to their burial grounds.

[5] Alaska, Arizona, Delaware, Georgia, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Michigan, Minnesota, Montana, Nebraska, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Virginia, Washington and Wisconsin.

This statute does not prohibit appellees' business in any manner; it simply regulates how a part of the business income will be handled, to protect the pre-need purchasers of funeral services.

Therefore, we reverse the Circuit Court's ruling about the constitutionality of W. Va. Code, 47-14-1, *et seq.*

*Reversed in part; affirmed in part.*